UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**LAURIE KIE**, **JONATHON RUSSO**, and
**SINAE CRUZ**, individually, and on behalf      Case No.
of others similarly situated,

        Plaintiffs,

vs.

**IVOX SOLUTIONS, LLC,** a Florida Limited
Liability Company,

        Defendant.

---

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs, Laurie Kie, Jonathon Russo, and Sinae Cruz, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, iVox Solutions, LLC, and state as follows:

**INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Laurie Kie, Jonathon Russo, and Sinae Cruz (collectively referred to herein as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant, iVox Solutions, LLC (referred to herein as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and Florida contract law.

2.     Defendant offers call center services to its clients and employs workers to receive and respond to customer calls on behalf of those clients. Defendant's customer service representatives are hourly, non-exempt employees who are paid a few dollars more than the

federally mandated minimum wage.

3.      Defendant requires its customer service representatives to work a full-time schedule, plus overtime. However, Defendant does not compensate the customer service representatives for all work performed; instead, Defendant only pays its customer service representatives for the time they are on the telephone and available to accept calls. This policy results in customer service representatives not being paid for all time worked and for all of their overtime in violation of the FLSA.

4.      Defendant's customer service representatives use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities. These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without them.

5.      Defendant's customer service representatives perform the same basic job duties and are required to use the same computer programs, software programs, servers and applications, and phone systems.

6.      Defendant knew or could have easily determined how long it took for its customer service representatives to complete the pre-shift start-up and log-in process and Defendant could have properly compensated Plaintiffs and the Class for the start-up and log-in work they performed, but did not.  Defendant also knew or could have easily determined or tracked how long it took for each customer service representative to complete the post-shift computer log-out and shutdown process, and Defendant could have paid Plaintiffs and the Class for the post-shift computer log-out and shutdown work they performed, but did not. Lastly, Defendant also failed to provide Plaintiffs and the Class with their full and uninterrupted unpaid lunch breaks.

7.      Plaintiffs bring this action on behalf of themselves, and all other similarly situated

hourly customer service representative employees of Defendant, to recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

9. Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's customer service representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

11. This court has personal jurisdiction over Defendant because it does business within the state of Florida, maintains its principal place of business in Florida, and is registered with the Florida Secretary of State.

12. Additionally, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as Plaintiffs' federal law claims.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs customer service representatives in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## **PARTIES**

14.     Plaintiff, Laurie Kie, is a resident of Port St. Lucie, Florida.  She has been employed by Defendant as an hourly customer service representative in Palm City, Florida since May 2015, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit A***.

15.     Plaintiff, Jonathan Russo, is a resident of Jensen Beach, Florida.  He has been employed by Defendant as an hourly customer service representative in Palm City, Florida since October 2014, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit B***.

16.     Plaintiff, Sinae Cruz, is a resident of Fort Pierce, Florida.   She has been employed by Defendant as an hourly customer service representative in Palm City, Florida since October 2014, and signed a consent form to join this collective action lawsuit, which is attached hereto as ***Exhibit C***.

17.     Additional Opt-In Plaintiffs were or are employed by Defendant as hourly customer service representatives during the past three years and their consent forms will also be filed in this case.

18.     Defendant, iVox Solutions, LLC, is a Florida corporation which employs over 500 customer service representatives to perform services which "include call center functionalities, order fulfillment, and overall logistics solutions" for its clients.  *See* http://www.ivoxsolutions.com/about.

19.     Defendant is registered to do business in Florida and can be served through its registered agent, Christopher Stapleton, located at 4485 SW Port Way, Palm City, Florida 34990.

4

**GENERAL ALLEGATIONS**

20. Plaintiff, Laurie Kie, has worked as a customer service representative for Defendant since May 2015. In that position, she is compensated at a base rate of $10.00 per hour and typically works between 55 and 80 hours per week.

21. Plaintiff, Jonathan Russo, has worked as a customer service representative for Defendant since October 2014. In that position, he is compensated at a base rate of $12.25 per hour and typically works over 45 hours per week.

22. Plaintiff, Sinae Cruz, has worked as a customer service representative for Defendant since October 2014. In that position, she is compensated at a base rate of $12.25 per hour and typically works over 40 hours per week.

23. Throughout their employment with Defendant, Plaintiffs were required to work substantial amount of time off-the-clock as part of their jobs as a customer service representatives. The off-the-clock tasks varied and Plaintiffs were never compensated for this time.

**Pre-Shift Work**

24. Defendant's customer service representatives are tasked with fielding inbound calls from Defendant's clients' customers in order to verify orders, assist in managing customer account information and services, handle other issues and questions presented by customers, and to sell additional products and services to existing customers.

25. In order to perform their jobs, Defendant's customer service representatives are required to start-up and log-in to various, secure computer programs, software programs, servers and applications, in order to access information and software. The start-up and log-in process takes substantial time on a daily basis with said time ranging from 5 to 10 minutes per day, or more.

26. Defendant's customer service representatives are not actually "clocked in" for their

shifts until *after* the computer start-up and log-in process is complete and *after* they log into the applicable programs, software, servers and applications, meaning that Plaintiffs and all other putative Class members work at least 5 to 10 minutes each per shift that they are never compensated for.  This off-the-clock time worked by Defendant's customer service representatives directly benefits Defendant and this process is an essential part of their job responsibilities as customer service representatives.

27. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's customer service representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.   One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2 (a copy of which is attached as ***Exhibit D***).

28. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre- and post-shift activities:   "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."   See *Id*., at p. 2.   Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

29. Additionally, Defendant's customer service representatives were required to perform other pre-shift off-the-clock tasks such as reviewing call statistics, reviewing e-mails, and meetings with supervisors.

**Unpaid Meal Periods**

30. Defendant provides its customer service representatives with one unpaid 30-minute meal period per shift on Mondays and one unpaid 45-minute lunch break per shift on Tuesdays through Sundays. The customer service representatives are required to "punch out" for their meal periods.

31. In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

32. However, Defendant does not provide its customer service representatives with a legitimate bona fide meal period.

33. One way in which Defendant fails to provide a bona fide meal period is by failing to pay its customer service representatives for the time spent finishing a customer call when it overlaps into the unpaid meal period.

34. Another way in which Defendant fails to provide a bona fide meal period is by requiring its customer service representatives to move their cars from the remote parking lot during their lunch break.[1]

---

[1] For example, Plaintiff Laurie Kie's scheduled shifts start at 10:30 a.m. and end at 9:30 p.m. Due to limited parking, she is required to park in a remote parking lot in the morning and take a shuttle bus to Defendant's office. Because the shuttle stops running before her shift ends, Ms. Kie is also required to move her car to Defendant's office parking lot during their unpaid meal periods (at a

35. Another way in which Defendant fails to provide a bona fide unpaid meal period is by requiring its customer service representatives to spend off-the-clock time logging back into the necessary applications and software programs in order to ensure they are able to take calls the moment the unpaid lunch period ends.

36. The work performed by Defendant's customer service representatives during their unpaid lunch period tasks take substantial time on a daily basis with said time ranging from 5 to 10 minutes per day, or more.

**Post-Shift Work**

37. Defendant's customer service representatives are required to log-out of and close down various programs at the end of each shift. The log-out process occurs on a daily basis with said time ranging from 1 to 5 minutes per day.

38. Defendant requires its customer service representatives to "clock out" *prior* to them logging out of the computer programs, software programs, servers and applications, meaning that Plaintiffs and all other Class members work at least 1 to 5 minutes each per shift that they are never compensated for.

39. At an estimated total of 11 to 25 minutes per day of unpaid off-the-clock work, Defendant's customer service representatives are owed substantial back pay prior to liquidation and interest.

40. Some examples of specific workweeks where Defendant failed to pay Plaintiff, Laurie Kie, overtime for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

    a. Bi-weekly pay statement dated June 23, 2015:

        ➢ Plaintiff was paid for 118.34 hours over 12 shifts (***Exhibit E***)

---

time when there is available parking).

> ➢ With 11 to 25 minutes of off-the-clock time per shift, Plaintiff should have been paid an additional 132 to 300 minutes of overtime for the two week period.

   b. Bi-weekly pay statement dated July 3, 2015:

   > ➢ Plaintiff was paid for 113.30 hours over 12 shifts (***Exhibit F***)

   > ➢ With 11 to 25 minutes of off-the-clock time per shift, Plaintiff should have been paid an additional 132 to 300 minutes of overtime for the two week period.

41. At all relevant times, Defendant was an "employer" and Defendant directed and directly benefited from the work and start-up and log-in time, meal period time, and log-out activities performed by its customer service representatives.

42. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of its customer service representatives.

43. At all relevant times, Defendant was able to track the amount of time its customer service representatives spent starting up, logging in to, and logging out of Defendant's computer systems; however, Defendant failed to document, track, or pay its customer service representatives for the off-the-clock work they performed.

44. At all relevant times, Plaintiffs were non-exempt hourly employees, subject to the requirements of the FLSA.

45. At all relevant times, Defendant used its attendance and adherence policies against its customer service representatives in order to pressure them into arriving early and working off-the-clock.

46. At all relevant times, Defendant's policies and practices deprived its customer service representatives of wages owed for the pre-shift, meal period time, and post-shift activities they performed.  Because Defendant's customer service representatives typically worked 40

hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

47. Defendant knew or should have known that Plaintiffs' and other customer service representatives' time spent starting up, logging in to, and logging out of Defendant's computer systems and programs is compensable under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

48. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any time during the last three years.*

(hereinafter referred to as the "Class"). Plaintiffs reserve the right to amend this definition if necessary.

49. Excluded from the Class are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

50. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

51. The employment relationships between Defendant and every putative Class member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up and log-in time, meal period time, and the amount of

post-shift log-out/shutdown time owed to each employee – does not vary substantially from Class member to Class member.

52.　　The key legal issues are also the same for every putative Class member, to wit: whether the 11 to 25 minutes of required off-the-clock time was compensable under the FLSA.

53.　　Plaintiffs estimate the Class, including both current and former employees over the relevant period, will include several hundred members. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

54.　　Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any time during the last five years.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition if necessary.

55.　　The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

56.　　There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

　　　　a.　　Whether the pre-shift time Rule 23 Class members spend on start-up and log- in activities each session is compensable time;

11

      c.      Whether the time Rule 23 Class members spend on boot-up and login activities during their unpaid meal period is compensable time;

      d.      Whether the post-shift time Rule 23 members spend on log-out activities is compensable time; and

      e.      Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

57.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

58.    Plaintiffs will adequately and fully protect the interests of the Rule 23 Class and they have retained counsel who are qualified and experienced in the prosecution of wage and hour class actions across the country. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

59.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

60.    This case is manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in

this case to be resolved with relative ease.

61. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

62. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

63. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

64. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

65. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

66. At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

67. Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

68. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and

all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

69. At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former employees to perform at least 5 to 10 minutes of pre-shift computer start-up and log-in time per session, but failed to pay these employees the federally mandated overtime compensation for all services performed.

70. At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former employees to perform no less than 5 to 10 minutes of boot-up and login time during their unpaid meal periods, but failed to pay these employees the federally mandated overtime compensation for any of the services performed. As a result, Defendant owes Plaintiff and the Class wages for the full 30 to 45 minutes of those unpaid lunch breaks.

71. At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former employees to perform 1 to 5 minutes of post-shift computer log-out and shutdown time per session, but failed to pay these employees the federally mandated overtime compensation for all services performed.

72. The pre-shift, meal period, and post-shift off-the-clock work performed by Plaintiffs and all similarly situated employees is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

73. In workweeks where Plaintiffs and other similarly situated employees worked 40 hours or more, the uncompensated pre-shift start-up and log-in time, the uncompensated meal period time, and the uncompensated post-shift log-out and shutdown time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

74. Plaintiffs and other similarly situated employees, by virtue of their job duties and activities actually performed, are all non-exempt employees.

75. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its customer service representatives to complete the pre-shift start-up and log-in process and Defendant could have properly compensated Plaintiffs and the Class for the start-up and log-in work they performed, but did not.  Defendant also knew or could have easily determined or tracked how long it took for each customer service representative to complete the post-shift computer log-out and shutdown process, and Defendant could have paid Plaintiffs and the Class for the post-shift computer log-out and shutdown work they performed, but did not. Lastly, Defendant could have provided Plaintiffs and the Class with bona fide meal periods, but did not.

76. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## Count II
## (Rule 23 Class Action)
## BREACH OF CONTRACT

77. Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

78. At all times relevant to this action, Defendant had a contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

79. Each Rule 23 Class member's contractual hourly rate is identified in paystubs and

other records that Defendant prepares as part of its regular business activities.

80. Plaintiffs and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out the pre-shift, meal period, and post-shift activities that Defendant required or accepted.

81. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the pre-shift start-up and log-in activities performed each session, for work time during their unpaid lunch-breaks, and the post-shift log-out and shutdown activities, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

82. Plaintiffs' and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

83. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent doing pre-shift, lunch-break, and post-shift activities, which is a fundamental part of an "employer's job."

84. The contract and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

85. As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class has been damaged, in an amount to be determined at trial.

86. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because Florida contract law applies to all claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

    a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

    b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

    c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action FLSA Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

    d.    Designating Plaintiffs as the representatives of the FLSA collective action Class and the Rule 23 Class and undersigned counsel as Class counsel for the same;

    e.    Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

    f.    Declaring Defendant's violation of the FLSA was willful;

    g.    Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

    h.    Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class, and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

    i.    Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

    j.    Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

    k.    Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, Laurie Kie, Jonathon Russo, and Sinae Cruz, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided

with respect to the above entitled cause.

Dated:   August 14, 2015

                                                 */s/Bradley W. Butcher*
Bradley W. Butcher, Esq.
Florida Bar No. 0020045
BUTCHER & ASSOCIATES, P.L.
6830 Porto Fino Circle, Suite 2
Fort Myers, Florida 33912
Phone:   (239) 332-1650
Fax:   (239) 322-1663
Primary:   ecf@b-a-law.com
Secondary:   bwb@b-a-law.com
*Local Counsel for Plaintiffs*

Jason J. Thompson *(Pending Pro Hac Vice)*
MI Bar No. P47184
Jesse L. Young *(Pending Pro Hac Vice)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com
jyoung@sommerspc.com

Timothy J. Becker *(Pending Pro Hac Vice)*
MN Bar No. 256663
Jacob R. Rusch *(Pending Pro Hac Vice)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
612-436-1800
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*